## THE STATE ET AL. vs. CURRAN.

*Appeal from Pulaski Circuit Court in Chancery.*

This cause was decided at the July Term, 1851, (7 *Eng. Rep.* 321,) and, by writ of error, carried up to the Supreme Court of the United States, where, at the December Term, 1853, it was decided: "That so much of the laws of the State of Arkansas (Act of 31st of January, 1843; act of 10th January, 1845; act of 23d December, 1846; act of 9th January, 1849,) as authorized and required the cancellation of the bonds of the State, given for money borrowed of the Bank by the State of Arkansas, or authorized and required the withdrawal of any part of the specie or other property of that Bank, and the appropriation thereof to the use of the State, or authorized and required the application of any part of the assets or property of that Bank, to pay bonds issued by the State, and sold to raise capital for the Bank of the State of Arkansas, or for the Real Estate Bank of the State of Arkansas, or authorized and required real property, purchased for the Bank of the State of Arkansas, or taken in payment of debts due to the Bank of the State of Arkansas, to be conveyed to, and the title thereof, vested in the State of Arkansas, impaired the obligation of contracts made with the complainant as the lawful holder and bearer of the bills of the Bank of the State of Ar-

kansas, and so were inoperative and invalid;" and said Supreme Court reversed the judgment of this court, and remanded the cause to be proceeded in, as the Constitution of the United States requires.

The appellee filed the mandate of the Supreme Court of the United States, and moved for an affirmance of the decree of the Circuit Court.

Mr. Justice SCOTT delivered the opinion of the Court.

The appellee, having filed in this court the mandate of the Supreme Court of the United States for the reversal of the decree rendered here in this cause at the July Term, 1851, (7 *Eng.* 321,) moves for an affirmance of the decree of the Pulaski Circuit Court, made the 20th February, 1850, and for an award of execution thereof, or for such order as may be necessary for its proper execution.

The substance of the decree now moved to be affirmed and executed, is:

1st. That Krebs pay to the appellee the amount of his indebtedness to the Bank, when due, according to the terms of his contract—that the same be transferred, and set over to the appellee —that, after it falls due, the appellee have execution thereof against him, and that upon payment, Krebs be released from liability to the Bank.

2d. That, unless, by the 1st day of May, 1851, the Bank should pay to the appellee the residue of the debt, damages and costs, after deducting the amount decreed to be paid by Krebs, that the lots and tracts of land described in the bill, (not including the lots sold to Krebs,) or so much thereof as should be necessary, should be sold on that day at a place specified, by a commissioner appointed by the court for that purpose, and after a specified notice: and that the commissioner execute and deliver deeds to the purchasers thereof conveying to them all right, and estate of the several defendants therein, on the 13th day of August, 1849, or at any time since.

3d. That, should the proceeds of such sale fail to produce the

aforesaid satisfaction, then, that Ross, the Financial Receiver of the Bank, should deliver to said commissioner, forthwith, all the bills and notes for circulation issued by the Real Estate Bank, (or so many thereof as might be necessary to satisfy the residue of said debt, damages and costs, and interest,) belonging to the State Bank, that were in his custody on said 13th day of August, 1849, or had come to his custody at any time thereafter, to be sold by said commissioner, at said place, on the 3d day of June, 1851, after a notice of sale of two weeks, in the newspaper specified before.

4th. That the said commissioner should have before said Circuit Court, on the second day of the June Term, 1851, of that court, the moneys realized by said sale or sales, and that the same be first applied to the payment of the costs of this suit and the expenses of executing the decree, and the residue to the satisfaction of the debt, damages and interest.

5th. That the right should be reserved to the appellee, in case the money so realized should not suffice for such satisfaction, to apply by supplemental bill or other appropriate remedy for the discovery sought by the appellee in his bill, and to pursue such satisfaction out of any other equitable assets of the State Bank.

6th. That the commissioner report his proceedings to said Circuit Court on the second day of the June Term, 1851, and that for that purpose the cause be continued until then.

We have thus set out the substance of this decree, as of six different parts, for convenience and distinctness of remark upon it. As to the *first*, it is erroneous as to Krebs, because under our statute, which we hold to be constitutional, and to embrace proceedings in equity as well as at law, no person indebted to the Bank is subject to be garnisheed by any person having a claim or debt against the Bank. And had Krebs appealed, the decree would have been reversed for that error. But he did not appeal from the decision in the Circuit Court, and was not a party to any of the subsequent proceedings. Whether or not he has slept too long upon his rights to be now released by the courts, and has no other hope than in such as it may be within the power of the Legisla-

ture to afford him upon the undoubted justice of his case, are questions that we are not called upon to solve, because he has no case before us.   But although erroneous as to Krebs, this part of the decree is in no sense injurious to either of his co-defendants, whose case only upon their appeal, is before us, and was before the Supreme Court at Washington.

Nor is there any error in the *second*, *third*, or *fourth* parts of the decree, for which it should be reversed.   There is, it is true, no decree of costs against Krebs, nor against the State of Arkansas, upon the overruling of their respective demurrers, as in such cases is directed by the statute, (*Digest, p.* 230, *sec.* 29;) and that it is directed in the last named part of the decree, that the money realized from the sales, shall be first applied to the payment of the costs of this suit; but this can only be injurious to the Bank in case the costs of overruling these two demurrers should be taxed against her in the bill of costs: and, in that case, the Circuit Court would be bound to relieve her from these items on a motion to re-tax.

The *fifth* part is but a reservation to prevent any conclusion against the appellee of his original right to such discovery of, and to subject to the payment of his judgment, such other or further equitable assets of the Bank as may be necessary for full satisfaction, according to his original right to subject any such assets, and in the manner allowed by law; and is no adjudication or decree in advance, that any such assets be now so subjected, and by this, or any other means, lay hold on debts due to the Bank in the hands of the debtors, contrary to the statute which, as we have already said, forbids it.   This part of the decree, therefore, is not erroneous.

The *sixth* part, specifying a time for the report of the commissioner, which has now elapsed, like the second, third and fourth, as to the time allowed to the Bank to make payment and in default thereof, the times for the sales, return of the money into court, &c., render it impossible that the decree can be executed accord-

ing to its literal terms as to time. But these matters relate to the execution of the decree only, and do not affect it as for error.

Finding then no error in the decree of the Circuit Court as against the parties before this court, when tested by the opinion of the Supreme Court of the United States in this cause, and that it is proper to make an order here to obviate the difficulties in the way of its execution that have arisen by lapse of time, the motion will be granted in this aspect: the order to be certified to the Circuit Court along with the affirmance that the decree of that court may be executed.

Mr. Chief Justice WATKINS not sitting.